# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2705

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of South Dakota. |
| Wesley Chuck Jacobs, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 16, 2011
Filed: May 2, 2011

_____

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____

RILEY, Chief Judge.

Wesley Chuck Jacobs, an enrolled member of the Oglala Sioux Tribe, pled guilty, pursuant to a written plea agreement, to assault with a dangerous weapon in Indian Country in violation of 18 U.S.C. §§ 113(a)(3) and 1153. On July 19, 2010, the district court[1] sentenced Jacobs to 36 months imprisonment followed by 3 years supervised release. Jacobs appeals his conviction and sentence, arguing the government's failure to establish compliance with Articles I and V of the Treaty

_____

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

between the United States of America and different Tribes of Sioux Indians, U.S.-Sioux, April 29, 1868, 15 Stat. 635 (hereinafter Fort Laramie Treaty), deprived the district court of subject matter jurisdiction over his criminal case. We disagree and affirm.

Jacobs contends "compliance with Articles I and V of the [Fort Laramie] Treaty is a prerequisite to the exercise [of] federal criminal subject matter jurisdiction over a member of the Oglala Sioux Tribe premised on an allegation of wrongdoing against another tribal member." "We review the question of subject matter jurisdiction de novo." Myers v. Richland Cnty., 429 F.3d 740, 745 (8th Cir. 2005).

Article I, paragraph 3, of the Fort Laramie Treaty provides in relevant part:

If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws . . . .

Article V of the Fort Laramie Treaty provides in relevant part:

In all cases of depredation on person or property [the agent for the Indians] shall cause the evidence to be taken in writing and forwarded, together with his findings, to the Commissioner of Indian Affairs, whose decision, subject to the revision of the Secretary of the Interior, shall be binding on the parties to this treaty.

According to Jacobs, the United States cannot "assert federal criminal jurisdiction over a tribal member under . . . the Major Crimes Act [MCA], 18 U.S.C. § 1153" until it has taken "specific steps required by the [Fort Laramie] Treaty," including "an investigation by the United States agent, written findings, and a

decision by the Commissioner of Indian Affairs." Jacobs also proposes the Fort Laramie Treaty promises "notice and an opportunity to be heard to the Tribe before federal courts obtain criminal jurisdiction over a tribal member."

We consistently have rejected similar challenges to federal subject matter jurisdiction based upon allegations the United States failed to comply with purported jurisdictional prerequisites in the Fort Laramie Treaty. See, e.g., United States v. Drapeau, 414 F.3d 869, 878 (8th Cir. 2005); United States v. Kane, 537 F.2d 310, 311 (8th Cir. 1976) (per curiam); see also United States v. Schrader, No. 10-2706, 2011 WL 679342, at *1 (8th Cir. Feb. 28, 2011) (unpublished per curiam) (rejecting an Article I notice jurisdictional challenge as "materially indistinguishable" from Drapeau).

As we explained in Drapeau, even if we assume Articles I and V could reasonably be construed as having established a jurisdictional requirement at the time the Fort Laramie Treaty was executed, "Congress' grant of citizenship to the Indians, 8 U.S.C. § 1401(a)(2) (now § 1401(b), *see* Pub. L. No. 95-432, § 3, 92 Stat. 1046 (1978)), makes them 'subject to all restrictions to which any other American citizen is subject, in any state,' and that the 'legislative history and the language of the statute itself are sufficient expression of a clear Congressional intent to abrogate or modify any treaty provisions to the contrary.'" Drapeau, 414 F.3d at 878 (quoting with approval and clarification United States v. Consol. Wounded Knee Cases, 389 F. Supp. 235, 243 (D. Neb. 1976) (Urbom, C.J.)).

Denying any conflict between the requirements of Articles I and V and the MCA, Jacobs argues the MCA "did not purport to diminish the [Fort Laramie] Treaty's protections for tribal members from prosecution without the requisite Indian agent investigation, report and determination by the Commissioner." Jacobs's argument is unavailing. "Congress intended full implementation of federal criminal jurisdiction in those situations to which the Major Crimes Act extended. The

[procedures Jacobs] seeks to impose would clearly be inconsistent with that congressional intent." <u>Kane</u>, 537 F.2d at 311.

We affirm.

_____